713 F.2d 49
 19 ERC 1561, 13 Envtl. L. Rep. 20,815
 UNITED STATES of America, Appellant,
v.
WADE, Melvin R. an individual; Eastern Rubber Reclaiming,
Inc., a corporation, and ABM Disposal Service Co., Inc., a
corporation, Tyson, Franklin P., an individual, Barnhouse,
Ellis, an individual, Slass, Larry H., as Trustee in
Bankruptcy of ABM Disposal Service Co., Inc., Apollo Metals,
Inc.; Congoleum Corporation, Gould, Inc.; H.K. Porter
Company, Inc.; Sandvik Steel, Inc.; Superior Steel Company.
 No. 82-1715.
 United States Court of Appeals,
Third Circuit.
 Argued June 13, 1983.
Decided Aug. 5, 1983.
 
 Mary L. Walker (argued), Deputy Asst. Atty. Gen., Washington, D.C., Peter F. Vaira, Jr., U.S. Atty., Philadelphia, Pa., Stephen D. Ramsey, Martin W. Matzen, Christopher Harris, Wendy B. Jacobs, Attys., Dept. of Justice, Washington, D.C., for appellant; Robert M. Perry, Associate Administrator for Legal and Enforcement Counsel and Gen. Counsel, E.P.A., Washington, D.C., Joseph J.C. Donovan, Office of Regional Counsel, E.P.A., Region III, Philadelphia, Pa., of counsel.
 Patrick T. Ryan (argued), Cynthia J. Giles, T. Andrew Culbert, Drinker, Biddle & Reath, Philadelphia, Pa., for defendant-appellee Congoleum Corp.
 Calvin P. Sawyier (argued), Edward J. Wendrow, Sidney Margolis, Winston & Strawn, Chicago, Ill., James D. Wilder, LaBrum & Doak, Philadelphia, Pa., for defendant-appellee Gould, Inc.
 David Richman, John A. Guernsey, Nicholas Kouletsis, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant-appellee H.K. Porter Co.
 Henry S. Ruth, Jr., Scott D. Patterson, Saul, Ewing, Remick & Saul, Philadelphia, Pa., Robert A. McTamaney, Carter, Ledyard & Milburn, New York, N.Y., for defendant-appellee Sandvik, Inc.
 Francis E. Marshall, Anthony P. Tinari, Michaelisa Marshall Pugh, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., for defendant-appellee Superior Tube Co.
 Bertram A. Stone, Stone, Pogrund & Korey, Chicago, Ill., Austin J. McGreal, McGill & McGreal, Philadelphia, Pa., for defendant-appellee Apollo Metals, Inc.
 Before HUNTER, HIGGINBOTHAM, Circuit Judges, and ZIEGLER,* District Judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 The United States initiated this action under section 7003 of the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6973 (1976 & Supp. V 1981), and section 106(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606(a) (Supp. V 1981), seeking, inter alia, permanent injunctive relief to remedy an alleged health and safety threat posed by the leakage of hazardous chemicals from a dumpsite in Chester, Pennsylvania (the "Wade site"). In its second amended complaint the government named as defendants the owners of the site, the transporters of waste to the site, and the alleged generators of the hazardous waste disposed of at the site prior to February 1978. On September 7, 1982, the district court entered an order dismissing the government's second amended complaint as against the alleged generators, holding that section 7003 of RCRA and section 106(a) of CERCLA could not be used to confer liability on nonnegligent, past off-site generators of hazardous wastes.
 
 
 2
 On November 3, 1982, the government filed a notice of appeal from the district court's order. On December 22, 1982, the appellees filed a motion to dismiss the appeal for want of jurisdiction. Because we hold that the district court's order is not a properly appealable order under 28 U.S.C. § 1292(a)(1) (1976), we will grant appellees' motion to dismiss.
 
 
 3
 * On April 20, 1979, the United States filed a complaint in the United States District Court for the Eastern District of Pennsylvania against Melvin R. Wade, Eastern Rubber Reclaiming, Inc., and ABM Disposal Service seeking relief under section 7003 of RCRA, 42 U.S.C. § 6973 (1976 & Supp. V 1981).[1] The government sought an order enjoining defendants from storing or disposing any solid or hazardous waste at the Wade site and compelling defendants to formulate and implement a plan for removing the waste currently on that property. On March 14, 1980, the government filed an amended complaint adding as defendants Franklin P. Tyson and Ellis Barnhouse, principals of ABM, and Larry H. Slass, trustee in bankruptcy for ABM. The government again sought injunctive relief under section 7003.
 
 
 4
 On November 10, 1981, the government filed a second amended complaint adding as defendants Apollo Metals, Inc., Congoleum Corp., Gould, Inc., H.K. Porter Co., Inc., Sandvik Steel, Inc., and Superior Tube Co. In its second amended complaint the government alleged that those added companies generated some of the hazardous waste deposited at the Wade site prior to 1978. The government repeated its claim for relief under section 7003 of RCRA and added a claim for relief under section 106(a) of CERCLA.[2]
 
 
 5
 On February 4, 1982, Gould, Inc., one of the alleged waste generators, filed a motion to dismiss the government's second amended complaint for failure to state a claim upon which relief could be granted. See Fed.R.Civ.P. 12(b)(6). On September 7, 1982, the district court filed an opinion and order granting the motion to dismiss. United States v. Wade, 546 F.Supp. 785 (E.D.Pa.1982). Examining the statutory language and legislative history of section 7003 of RCRA and section 106(a) of CERCLA, the district court concluded that they provided no statutory basis for relief against non-negligent, past off-site generators of hazardous wastes. Id. at 788. Accordingly, the district court entered an order dismissing the complaint as against the alleged generators. The district court's decision did not address the government's claims against the other defendants.[3]
 
 
 6
 On November 3, 1982, the government filed a notice of appeal from the district court's September 7 order dismissing the government's second amended complaint. On December 22, 1982, the appellees[4] filed a motion to dismiss the government's appeal for want of jurisdiction. In its response the government argued that its appeal was properly brought pursuant to 28 U.S.C. § 1292(a)(1) (1976).[5] It contended that the district court's order had the practical effect of entirely disposing of the government's prayer for injunctive relief and thus was appealable under section 1292(a)(1) as an interlocutory order refusing an injunction. On January 7, 1983, appellees' motion to dismiss the appeal was referred to the merits panel.
 
 II
 
 7
 Section 1292(a)(1) is an exception to the general principle that only final decisions of the federal district courts are reviewable on appeal. Carson v. American Brands, Inc., 450 U.S. 79, 83, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981); Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978); Kershner v. Mazurkiewicz, 670 F.2d 440, 446-47 (3d Cir.1982) (in banc); Tokarcik v. Forest Hills School District, 665 F.2d 443, 446 (3d Cir.1981), cert. denied, --- U.S. ----, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982). See generally Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955) (discussing history of rule). Under that provision a party has an appeal of right from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1) (1976) (emphasis added). The Supreme Court has cautioned, however, that section 1292(a)(1) must be construed narrowly to conform to the congressional policy against piecemeal appeals. Carson, 450 U.S. at 84, 101 S.Ct. at 996; Gardner, 437 U.S. at 480, 98 S.Ct. at 2453; Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 24, 87 S.Ct. 193, 194, 17 L.Ed.2d 23 (1966); see United States v. RMI Co., 661 F.2d 279, 281 (3d Cir.1981). Thus for an interlocutory order to be immediately appealable, a litigant must show more than that the district court's order has the practical effect of refusing an injunction. In addition a party seeking an appeal of right under section 1292(a)(1) must establish that the district court's order might have a "serious, perhaps irreparable consequence," and that the order can be "effectively challenged" only by immediate appeal. Carson, 450 U.S. at 84, 101 S.Ct. at 996; Shirey v. Bensalem Township, 663 F.2d 472, 475 (3d Cir.1981); RMI, 661 F.2d at 281.
 
 
 8
 It is our view that the government has not made a sufficient showing to justify an immediate appeal under 28 U.S.C. § 1292(a)(1) (1976). While the district court's order does preclude the government from obtaining any injunctive relief against appellees, it does not bar the government from obtaining full injunctive relief against the other original defendants.[6] Thus the district court's order does not have the serious, perhaps irreparable, consequence of effectively denying the government its requested relief. Plantamura v. Cipolla, 617 F.2d 344, 346-47 (3d Cir.1980); see Carson, 450 U.S. at 86 & n. 11, 101 S.Ct. at 997 & n. 11; Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 480-81 & n. 7, 98 S.Ct. 2451, 2453 & n. 7, 57 L.Ed.2d 364 (1978). Furthermore the government has not shown that the district court's order will result in serious or irreparable consequences at the site itself sufficient to support immediate review. The fact that the government has not sought any preliminary injunctive relief in the five years since institution of this suit is a strong indication that the status quo can continue until the ultimate conclusion of the litigation. Shirey v. Bensalem Township, 663 F.2d at 476; United States v. RMI Co., 661 F.2d at 281-82; see Carson, 450 U.S. at 88-89, 101 S.Ct. at 998-99.[7] Finally, on the facts of this case there is "nothing inherent in the district court's order which will escape review if the order is not immediately appealable." RMI, 661 F.2d at 282. Accordingly, we conclude that the government's appeal does not fall within the narrow category of cases immediately appealable under 28 U.S.C. § 1292(a)(1) (1976).
 
 III
 
 9
 Appellees' motion to dismiss the government's appeal for want of appellate jurisdiction will be granted.
 
 
 
 *
 Honorable Donald E. Ziegler, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 The current version of section 7003 states:
 § 6973 Imminent hazard
 (a) Authority of Administrator
 Notwithstanding any other provision of this chapter, upon receipt of evidence that the handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person contributing to such handling, storage, treatment, transportation or disposal to stop such handling, storage, treatment, transportation, or disposal or to take such other action as may be necessary. The Administrator shall provide notice to the affected State of any such suit. The Administrator may also, after notice to the affected State, take other action under this section including, but not limited to, issuing orders as may be necessary to protect public health and the environment.
 (b) Violations
 Any person who willfully violates, or fails or refuses to comply with, any order of the Administrator under subsection (a) of this section may, in an action brought in the appropriate United States district court to enforce such order, be fined not more than $5000 for each day in which such violation occurs or such failure to comply continues.
 42 U.S.C. § 6973 (1976 & Supp. V 1981).
 
 
 [2]
 Section 106(a) of CERCLA states:
 § 9606 Abatement actions
 (a) Maintenance, jurisdiction, etc.
 In addition to any other action taken by a State or local government, when the President determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility, he may require the Attorney General of the United States to secure such relief as may be necessary to abate such danger or threat, and the district court of the United States in the district in which the threat occurs shall have jurisdiction to grant such relief as the public interest and the equities of the case may require. The President may also, after notice to the affected State, take other action under this section including, but not limited to, issuing such orders as may be necessary to protect public health and welfare and the environment.
 42 U.S.C. § 9606(a) (Supp. V 1981).
 
 
 [3]
 A week prior to the district court's decision, the government filed a motion for leave to file a third amended complaint. In its opinion the district court noted the government's outstanding motion and stated, "[d]ecision on the motion for leave to amend must, of course, await expiration of the time provided for defendants to file responses. I add this footnote simply to make it clear that nothing in this Memorandum is intended as a comment on the merits of the government's motion for leave to amend." 546 F.Supp. at 794 n. 24
 On September 28, 1982, the district court granted the government's motion, and the government filed its third amended complaint on October 7, 1982. In its new complaint the government repeated its claims for injunctive relief against the non-generator defendants under section 7003 of RCRA and section 106(a) of CERCLA and added an additional claim for reimbursement against the non-generator defendants under section 7003. It also added claims against both the generators and the non-generators for restitution under the common law and under section 107 of CERCLA, 42 U.S.C. § 9607 (Supp. V 1981), for past and future cleanup costs incurred by the government at the Wade site. Discovery has continued in the district court on those claims.
 
 
 [4]
 The original appellees in this appeal were Apollo Metals, Inc., Congoleum Corp., Gould, Inc., H.K. Porter Co., Inc., Sandvik Steel, Inc., and Superior Tube Co. Prior to oral argument, counsel informed us that Superior Tube Co. and H.K. Porter Co., Inc. had settled with the government and thus were no longer parties to this appeal
 
 
 [5]
 Section 1292(a)(1) states in part:
 (a) Except as provided in subsection (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
 (1) Interlocutory orders of the district courts of the United States ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.
 28 U.S.C. § 1292(a)(1) (1976).
 
 
 [6]
 Based on the government's complaint, we must accept as true that Eastern Rubber Reclaiming, Inc. and ABM Disposal Services Co., Inc. have been declared bankrupt. Second Amended Complaint pp 4, 6; see Valn v. United States Department of Defense, 708 F.2d 116 at 117 n. 1 (3d Cir.1983). There is nothing in the record to suggest, however, that full injunctive relief could not be obtained against those companies as well as the other original defendants
 
 
 [7]
 In its brief on the appealability issue, the government contends that the district court's order contravenes certain "controlling congressional judgments." It argues that the district court's decision is inconsistent with Congress' determination that the Fund established by CERCLA would not be large enough to permit the government to undertake remedial action in every case where the endangerment would justify such action to protect public health. Furthermore the government contends that the district court failed to recognize that Congress intended that either section 106(a) or section 107 of CERCLA, 42 U.S.C. §§ 9606(a), 9607 (Supp. V 1981), could be used to reach generators of hazardous waste, and thus the district court erred in forcing the government to expend its own funds before any of the generators could be held liable for cleanup costs
 We think those arguments are misdirected. Instead of addressing the issue of whether the district court's order is immediately reviewable, the government's arguments go more to whether the district court's decision was proper on the merits, an issue which we may consider only if our appellate jurisdiction has been properly invoked.